**COMP**
ELAINE A. DOWLING, ESQ.
Nevada Bar No. 8051
EAD Law Group, LLC
8275 S. Eastern Avenue, Suite 200
Las Vegas, Nevada 89123
Telephone: (702) 724-2636
Fax: (702) 938-1028
Email: ead@eadlawgroup.com
*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \* \*

| | |
|---|---|
| FRED KHALILIAN, , Derivatively on Behalf of Nominal Defendant, MONSTER PRODUCTS INC.,<br><br>Plaintiff,<br><br>vs<br><br>MONSTER PRODUCTS, INC., a Nevada corporation; NOEL LEE, an individual; KEVIN LEE, an individual; BRUCE GIESBRECHT, an individual;  DOES I through X, inclusive; and ROE ENTITIES XI through M, inclusive,<br><br>Defendants.<br><br>And<br><br>Nominal Defendant, MONSTER PRODUCTS INC., | CASE NO.:<br>DEPT. NO.:<br><br>**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT (JURY TRIAL DEMANDED** |

FRED KHALILIAN ("Plaintiff") is a shareholder of Monster Products, Inc. ("Monster" or the "Company"), and files this Verified Shareholder Derivative Complaint (the "Complaint") pursuant to Federal Rule of Civil Procedure 23.1 on behalf of the Company against certain of its officers and directors seeking to remedy Defendants' violations of the law. Including breaches of fiduciary duties relating to events that began as early as 2015 and continued until the present day (the "Relevant Period") and that have caused substantial financial losses to Monster

and other damages, including, but not limited to, its reputation and goodwill. Plaintiff hereby alleges upon personal knowledge as to his own acts and upon information and belief as to all other matters, based upon, inter alia, an investigation, which included, among other things, the review of publicly available documents filed with the United States Securities and Exchange Commission ("SEC"), press releases and other media reports.

### JURISDICTION AND PARTIES

1. This Court has jurisdiction over all claims asserted herein pursuant to 28 U.S.C. §1331 in that plaintiffs' claims arise in part under the constitution and laws of the United States, including SOX. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a). This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

2. Venue is proper in this jurisdiction pursuant to 28 U.S.C. §1391(b) insofar as a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

3. Plaintiff, FRED KHALILIAN (hereinafter "KHALILIN") is a resident of the State of California.

4. Nominal Defendant, MONSTER RODUCTS, INC., a Nevada Corporation., (hereinafter "MONSTER") is a Nevada corporation.

5. Defendant, Noel Lee, (hereinafter "LEE") is a resident of the State of California doing business in Clark County, Nevada and an officer and director of Nominal Defendant Monster.

6. Defendant, Kevin Lee, (hereinafter "KLEE") is a resident of the State of California doing business in Clark County, Nevada and an officer and director of Nominal Defendant Monster.

7. Defendant, Bruce Giesbrecht, (hereinafter "GIESBRECHT") is a resident of the State of California doing business in Clark County, Nevada and an officer and director of Nominal Defendant Monster.

8. The true names of Defendants DOES I through X, inclusive, whether individual,

corporate, associate or otherwise are unknown to the Plaintiff, who therefore sues each Defendant by fictitious names. The Plaintiff is informed and thereupon allege that each of the Defendants designated herein as DOE is in some way responsible for the damages claimed by the Plaintiff herein. The Plaintiff will ask leave of this Court to amend this Complaint to insert the true names and capacities of Defendants DOES I through X, inclusive, when the identities have been ascertained, to formulate appropriate allegations, and to join such Defendants in this action.

9. Upon information and belief, at all times relevant hereto, each of the Defendants set forth herein was the principal, agent, employee, employer or co-conspirator of each other, and at all relevant times were acting within the course and scope of such relationships.

10. Plaintiff is informed and believes that at all times relevant hereto, Defendants Monster and Lee were principals, owners, and managers of each other Defendants, and treated each other Defendant and its finances as a mere shell, instrumentality, and conduit through which each other Defendant carried on business in name only, exercising control and dominance of such each other business to such an extent that any individuality or separateness of each other. Defendant did not exist, and to maintain the fiction of a separate business entity would promote fraud and sanction injustice, such that each other Defendant should be treated as the alter egos of one another.

**GENERAL ALLEGATIONS**

11. The Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth at this time.

12. Defendant Lee is an officer and director of nominal Defendant Monster.

13. Beginning in 2015 and through the present, Defendant Lee, KLEE and GIESBRECHT along with other former officers have used millions of dollars of Monsters funds for his own personal use, benefit and enjoyment, including cash, jewelry, cars, travel, companionship and numerous other personal items to the detriment of Monster and its shareholders.

14. Not only have these actions drained Monster of valuable assets but also they are believed to have slowed down the process of public reporting following the transaction between various Monster entities and Atlantic Acquisition, Inc. (now Monster Products, Inc.) in 2018.

15. Monster has now filed and withdrawn an S-1 and has failed to make any of its required periodic filings since the transaction in the spring of 2018.

16. Monster and Defendant Lee have filed a TRO against Plaintiff in a blatant attempt to prevent Plaintiff from finding out about the above activities and further have attempted to humiliate and pressure Plaintiff by filing false press releases, reports and complaints with vendors such as AMEX alleging bad conduct by Plaintiff.

17. Due to the above and his frequent chargebacks claiming the charges were unauthorized, AMEX gave Lee the option of paying the outstanding $1,200,000.00 to AMEX or having his AMEX revoked for the filing of the false reports and such AMEX has now been revoked.

18. Defendants have refused to make SEC filings which are both required by law and which has the result of making the shareholders shares valueless.

19. Defendants have further attempted to hide their conduct through the use of relatives as officers and directors of the corporation including Robin Lee and Ashley Elliot (Lee's mistress).

20. Defendants appointed Kevin Lee and Ashley Elliot to the Board of Directors to vote for the removal of Plaintiff as a Director and did not provide any notice of the alleged shareholders meeting at which they claimed to remove Plaintiff from the Board only to remove her an hour later all in an effort to hide their nefarious dealings from Plaintiff.

## **DEFENDANTS' DUTIES**

21. By reason of their positions as directors, and with regard to some, officers, and/or fiduciaries of Monster, Defendants owed Monster and its shareholders fiduciary obligations of trust, loyalty, due care, good faith, and fair dealing and were and are required to use their utmost ability to control Monster in a fair, just, honest and equitable manner.

22. Each director and officer of the Company owes to Monster and its shareholders the fiduciary duty to exercise due care and good faith and diligence in the administration of the Company's affairs, and the highest obligations of fair dealing. In addition, as directors of a publicly held company, the Director Defendants had a duty to insure that the Company had sufficient internal controls to ensure that it promptly disseminated accurate and truthful

information with regard to the Company's financial results and timely required filings.

23. To discharge their duties, Defendants were required to exercise reasonable and prudent supervision over management, and the Company's policies, practices and financial controls. By virtue of such duties, Defendants were required to, among other things:

(a) Ensure that an adequate system of internal controls was in place such that Monster complied with applicable laws and financial results were reported timely accurately;

(b) Ensure that the Company had adequate corporate checks in place to ensure the Company was in compliance with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating required truthful and accurate statements to the SEC and the investing public;

(c) Ensure that management was conducting the affairs of the Company in an efficient, business-like manner to make it possible to provide the highest quality performance of its business, and to maximize the value of the Company's stock; and

(d) Remain informed as to how Monster conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities law.

24. Defendants' conduct complained of herein involves a reckless and/or knowing violation of their obligations as directors and officers of Monster, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that Defendants were aware or should have been aware posed a risk of serious injury to the Company.

25. Defendants breached their fiduciary duties by failing to implement an adequate system of internal controls, which failure caused the Company to either not make filings at all or misrepresent its financial condition.

26. During all times relevant hereto, Defendants breached their fiduciary duties to Monster's shareholders by failing to prevent financial statements from being issued that misrepresented to the investing public, including shareholders of Monster, the Company's actual

financial results or not making required filings at all.

27. Moreover, these actions have irreparably damaged Monster's corporate image and goodwill. For at least the foreseeable future, Monster will suffer from what is known as the "liar's discount," a term applied to the stocks of companies implicated in illegal behavior and that misled the investing public, such that Monster's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## COUNT I

### Against All Defendants for Breach of Fiduciary Duty in Connection with their Management of Monster

28. Plaintiff incorporates by reference all preceding and subsequent paragraphs as if fully set forth herein.

29. As alleged in detail herein, each of the Defendants had a duty to, inter alia, exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner and, when placed on notice of improper or imprudent conduct by the Company and/or its employees, exercise good faith in taking action to correct the misconduct and prevent its recurrence.

30. As alleged in detail herein, Defendants knew or should have known of Defendants' misuse of funds and failure to file required reports and they failed to remedy this conduct, which has caused disastrous consequences for the Company and its stockholders. Thus, Defendants breached their fiduciary duties of loyalty and good faith.

31. All of the Defendants willfully ignored the obvious and pervasive problems with Monster's accounting and internal control practices and procedures and made no true effort to correct the problems or prevent their recurrence. Thus, Defendants abdicated their fiduciary duty of good faith, which could not have been the exercise of valid business judgment.

32. As a direct and proximate result of Defendants' foregoing breaches of fiduciary duties, the Company has suffered significant damages, as alleged herein.

## COUNT II

### Against All Defendants for Breach of Fiduciary Duty for Disseminating False Information to Monster Shareholders

33. Plaintiff incorporates by reference all preceding and subsequent paragraphs as if

fully set forth herein.

34. As alleged in detail herein, each of the Defendants had a duty to ensure that Monster disseminated accurate, truthful and complete information to the shareholders.

35. Each of the Defendants violated the fiduciary duties of care, loyalty, and good faith by causing or allowing the Company to disseminate to the shareholders materially misleading and inaccurate information through public statements, including, but not limited to, SEC filings, as described herein.

36. Additionally, each of the Defendants failed to correct the Company's publicly Report, financial results and guidance. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

37. As a direct and proximate result of Defendants' foregoing breaches of fiduciary duties, the Company has suffered significant damages, as alleged herein.

## COUNT III

### Against All Defendants for Breach of Fiduciary Duty for Failing to Design and Implement Adequate Internal Controls

38. Plaintiff incorporates by reference all preceding and subsequent paragraphs as if fully set forth herein.

39. As alleged herein, each of the Defendants had a duty to Monster and its stockholders to design and implement adequate internal controls, including accounting controls. Further, each of the Defendants were required to ensure the Company's financial results were recorded in compliance with GAAP and SEC rules and regulations.

40. Although Defendants repeatedly told shareholders that they had complied with their fiduciary duties in this regard, those statements were untrue. The Company lacked the most basic internal controls which could have prevented the misuse of funds (or, detected it sooner) and the resulting material negative impact on the Company's financial statements.

41. Thus, notwithstanding their statements to the contrary, Defendants abdicated their responsibility to establish and maintain adequate internal controls at Monster, having made no good faith effort to fulfill their fiduciary duties.

42. As a direct and proximate result of the Defendants' foregoing breaches of

fiduciary duties, the Company has suffered significant damages, as alleged herein.

## COUNT IV

### Against All Defendants for Unjust Enrichment

43. Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

44. Defendants were unjustly enriched by their receipt and retention of corporate funds and property as alleged herein, and it would be unconscionable to allow them to retain the benefits thereof

45. To remedy Defendants' unjust enrichment, the Court should order them to disgorge to the Company all of the corporate funds and property they improperly they received.

## COUNT V

### Against the Officer Defendants for Breach of Fiduciary Duty and Unjust Enrichment Related to the Salaries, Bonuses and any Other Incentive Compensation They Received During the Relevant Period

46. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

47. The Officer Defendants received corporate funds and property improperly.

48. Because the Officer Defendants received corporate funds and property improperly, the Company's financial statements were materially misleading at the time they were issued. As a result, the Company's financial performance was materially overstated at all times relevant hereto, and because these defendants received financial benefits based on the Company's false financial performance, they were unjustly enriched at the Company's expense. Thus, it would be unconscionable to allow them to retain the benefits of their improper conduct.

49. To remedy the Officer Defendants' unjust enrichment, the Court should order them to disgorge to the Company all other monetary benefits they received during the Relevant Period.

## COUNT VI

### Against All Defendants for Violation of §10(b) and Rule 10b-5 of the Exchange Act

50. Plaintiff incorporates by reference and realleges each and every allegation set

- 8 -

forth above, as though fully set forth herein.

51. Throughout the Relevant Period, Defendants individually and in concert, directly and indirectly, by the use and means of instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct which allowed them to receive improper payments, property and funds and make no recompense to the Company.

52. Defendants employed devices, schemes, and artifices to defraud while in possession of material, adverse non-public information and engaged in acts, practices, and a course of conduct that included the making of, or participation in the making of, untrue and/or misleading statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Monster not misleading.

53. Defendants, as top executive officers and directors of the Company, are liable as direct participants in the wrongs complained of herein. Through their positions of control and authority as officers of the Company, each of the Defendants was able to and did control the conduct complained of herein and the content of the public statements disseminated by the Company.

54. Defendants acted with scienter throughout the Relevant Period, in that they either had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose the true facts, even though such facts were available to them. Defendants were among the senior management of the Company, and were therefore directly responsible for the false and misleading statements and/or omissions disseminated to the public through press releases, news reports, and filings with the SEC.

55. Each of the Defendants participated in a scheme to defraud with the purpose and effect of defrauding Monster.

56. By virtue of the foregoing, Defendants have violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

**WHEREFORE,** Plaintiff demands judgment as follows:

A. Directing Defendants to account to Monster for all damages sustained or to be sustained by the Company by reason of the wrongs alleged herein;

B. Directing Monster to take all necessary actions to reform its corporate governance and internal procedures to comply with applicable laws and protect the Company and its shareholders from a recurrence of the events described herein, including, but not limited to, a shareholder vote resolution for amendments to Monster's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote on corporate governance policies;

C. Awarding to Monster restitution from the Defendants and ordering disgorgement of all profits, benefits and other compensation obtained by the Individual Defendants.

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees and expenses; and

E. Granting such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED this 14TH day of May, 2019.

EAD LAW GROUP, LLC

_____
ELAINE A. DOWLING, ESQ.
Nevada Bar No. 8051
8275 S. Eastern Avenue, Suite 200
Las Vegas, Nevada 89123
Telephone: (702) 724-2636
Fax: (702) 938-1028
Email: ead@eadlawgroup.com
*Attorney for Plaintiff*

## VERIFICATION

STATE OF ~~NEVADA~~ Florida )
) ss.
COUNTY OF ~~CLARK~~ Miami-Dade )

FRED KHALILIAN, bring first duly sworn, deposes and says:

That I am the Plaintiff in the above-entitled action; that I have read the foregoing document and know the contents thereof; the same is true of my own knowledge except as to those matters therein stated on information and belief and, as to those matters, I believe them to be true.

*/s/ Fred Khalilian*
FRED KHALILIAN

[Notary Seal: DAVID J. BEATO, Notary Public, State of Florida, Commission # GG 300736, My Comm. Expires Feb 11, 2023]

SIGNED and SWORN to before me on the 14 day of May, 2019.

_____
NOTARY PUBLIC

- 11 -